NOAH FELLS, Appellant, *v.* MARTIN KATZ et al., Respondents.

(Argued February 13, 1931; decided March 24, 1931.)

*Conrad Saxe Keyes* for appellant. The mail chute business is not similar to that of the corporate defendant. (*People's Trust Co.* v. *Schultz Novelty Co.*, 244 N. Y. 14.) The covenant against engaging in other business and providing that each of the parties would devote his entire

time to the business of the corporation was an independent covenant, the violation of which did not justify the abrogation of the entire agreement between the parties. (*Rosenthal Paper Co.* v. *National Folding Box & Paper Co.*, 226 N. Y. 313; *Anheuser-Busch Ice Co.* v. *Reynolds*, 221 App. Div. 174.)

*Samuel Gottlieb* and *William Weisman* for respondents. Plaintiff's misconduct warranted his being ousted as officer, director and employee of the defendant corporation. (*Rosenthal P. Co.* v. *National Folding B. & P. Co.*, 226 N. Y. 313; *Ming* v. *Corbin*, 142 N. Y. 334; *Portfolio* v. *Rubin*, 233 N. Y. 439; *Anheuser-Busch Ice Co.* v. *Reynolds*, 221 App. Div. 174.) The court will not construe the agreement upon which plaintiff predicates his right to remain on the directorate as a covenant to keep him on the board, irrespective of whether he has been guilty of misconduct in that office. Such an agreement would be contrary to public policy and void. (*Anderson* v. *Curtis*, 223 N. Y. 313; *West* v. *Camden*, 135 U. S. 507; *Jackson* v. *Hooper*, 73 N. J. Eq. 592; *Guernesey* v. *Cook*, 120 Mass. 501; *Rosenthal* v. *Light*, 185 App. Div. 702; 227 N. Y. 587.)

Pound, J. A corporation, Fells, Lent, Cantor, Katz Corporation, the defendant corporation herein, was formed by the merger of two corporations, Fells, Lent & Cantor Corporation and New York Metal Store Fronts Co., Inc., which was owned and controlled by A. and M. Katz. The stock of the new corporation was divided equally among Fells, Lent, Cantor and the two Katz brothers. All the parties signed an agreement to pay $20,000 each for his equal share of the stock of the new corporation. They agreed to elect each one of their number an officer in the new corporation for a period of ten years. Fells was to be elected president. They also agreed to elect all the parties, together with Minnie Katz, as directors of the corporation and to elect annually the same persons as officers of the corporation.

The agreement further provided:

" *Sixteenth.* Said corporation shall immediately enter into a contract of employment with each of the parties hereto for the period of ten years at the annual salary of not less than $5,200 per annum and not more than $12,000 per annum. Such salary to be payable in equal weekly installments of $100 at the end of each week, and the balance, if any, at the end of the fiscal year as hereinafter provided. Each of said contracts shall provide that the employee therein named shall receive or be entitled to receive a salary of not more or less than any of the other parties to this agreement.

" *Seventeenth.* At the end of the corporate fiscal year before the declaration of any dividends there shall be paid to each of the parties hereto as salary an equal share of the net earnings which when added to the sum of $5,200 theretofore paid to each of the parties during the year, shall not aggregate more than $12,000 for that year.

" *Eighteenth.* Said contracts shall provide that each of the parties hereto shall devote his entire time and attention to the business of the corporation in a general capacity to the end that each one will perform those duties for which he is best suited or qualified with the exception that Fells may devote as much time and attention to his own personal affairs as he may reasonably require."

In accordance with this agreement contracts of employment were entered into, dated April 17, 1926, for the period of ten years from May 1, 1926. Fells was to receive a minimum salary of $5,200 per annum and a maximum salary of $12,000 per annum. In the event of illness or other incapacity he was to receive his full salary for a year and $5,200 a year thereafter. He agreed to " devote his entire time and attention and best efforts to the furthering of the interests and in the service of the party of the second part." Such duties were to be general in character and the same as those of his four associates.

The associates proceeded amicably under these agreements until plaintiff organized a new company, United

States Mail Chute Corporation, to manufacture mail chutes. While the defendant company did not manufacture mail chutes the business was to an extent a competing business and it took the time of plaintiff away from the defendant corporation. The defendant corporation then proceeded to depose plaintiff as president and director and to terminate his contract of employment, at a special meeting of the board of directors called for that purpose on September 17, 1929. No provision is contained in the by-laws for the removal of a director or of the president of the corporation by the directors before the end of his term (*People ex rel. Manice* v. *Powell*, 201 N. Y. 194), but others were elected to take the place of plaintiff as director and president and no point is made of the fact that this was done at a special meeting and not at the regular meeting following the annual meeting of the stockholders.

Plaintiff brought action to compel his reinstatement as president of the company, director and employee under the contract above referred to. He did not succeed. The trial court held that he, in violation of his duty as an officer and employee of the defendant corporation, engaged in a competing business and devoted his time thereto to the prejudice of the defendant corporation and that it was justified in discharging him. Evidence is not lacking to sustain the finding of breach of duty.

It is further contended that even in the event of the breach of the contract of employment, the corporation had by reason of the agreements of the parties no power to discharge him but could merely call on him for an accounting or obtain an injunction against him and that the court should reinstate him. If the contract of employment is to be considered as a separate contract apart from the merger agreement between the stockholders of the two original companies, the covenants are doubtless concurrent. The corporation could terminate the contract of employment for breach thereof. But it is urged that the contract of employment is something more; that

the covenants are independent; that Fells was to receive at least $5,200 a year even if he became permanently incapacitated and that he should receive as much if he breached the contract; that it was the intention of the parties that salary should constitute not merely compensation for services but also a part of the purchase price of plaintiff's stock.

But even in that event, we are dealing with the action of the board of directors of the defendant corporation. Provision for incapacity does not include provision for perversity. One is consideration for infirmity. The other would be a reward for neglect. Even if the stockholders may make agreements among themselves as to the management of corporate affairs by the election of directors which are valid and will be enforced, yet General Corporation Law (Cons. Laws, ch. 23), section 27, provides: " the business of a corporation shall be managed by its board of directors," and by the by-laws of defendant corporation it is provided that " the board of directors shall have the control and general management of the affairs and business of the corporation." Directors hold their office charged with the duty to act for the corporation according to their best judgment. " Clearly the law does not permit the stockholders to create a sterilized board of directors." (*Manson* v. *Curtis*, 223 N. Y. 313, 323.) The courts will not regulate their conduct in the reasonable exercise and performance of their duty, even though they may by such conduct render the corporation liable to actions for damages for unlawful discharge. An agreement among stockholders whereby the directors are bereft of their power to discharge an unfaithful employee of the corporation is illegal as against public policy. (*Manson* v. *Curtis, supra.*) The agreement of the stockholders to continue a man in the directorate must be construed as an obligation to retain him only so long as he keeps the agreement on his part faithfully to act as a trustee for the stockholders. An agreement to

continue a man as president is dependent upon his continued loyalty to the interests of the corporation.

Hardship to the plaintiff may result from this construction of the contract. Hardship to the corporation would result if it were held that the board of directors could not terminate the employment but were compelled to reward alike the faithful and the unfaithful and endure the unfaithful officer and employee while he diverted to a rival the business he might have obtained for the corporation that had employed his best efforts in its behalf. The question is not here how far the removal of the appellant may affect the right of the other parties to the contract to the continued enjoyment of the salary and other benefits provided therein.

The disposition of the case below was correct.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.