McCurn, J.
The original stockholders of Quality Oil and Supply Company, Inc., were the plaintiff Lloyd F. Lockley, the defendant George F. Bobie and one Arthur G. Hutchinson, each of whom held 150 shares of preferred stock and 150 shares of common stock of the corporation. On May 31, 1940, when a written agreement, hereinafter referred to, was entered into between Lockley, Bobie and Hutchinson, they were the owners of all the outstanding stock of the corporation except sixteen shares of preferred stock and eighteen shares of common stock which shares were owned and held by Mrs. Hutchinson and by Glen W. Petty.
In August, 1941, Lockley and Bobie entered into negotiations with Hutchinson resulting in a sale to Hutchinson of a farm owned by the corporation, together with its farm implement business, consideration for which was the transfer by Hutchinson to the corporation of all of his stock. Such stock thereupon became treasury stock. Transfer of the stock was made in March, 1942, and thereafter and until November, 1947, Lockley and Bobie operated the affairs of the corporation, alternatively holding the offices of president and treasurer, each devoting his entire time to the affairs of the corporation.
In January, 1943, Bobie purchased the stock held by Petty and procured new certificates to be issued in place thereof for ten shares of common and fourteen shares of preferred stock to himself and four shares of common to his wife Buby H. Bobie. In 1947, Bobie and his son Kenneth Bobie purchased the remaining outstanding stock. As a result of such purchase and transfer, the defendants Bobie held a total of 168 shares of common and 168 shares of preferred stock. Plaintiff Lockley’s ownership remained at 150 shares of common and 150 shares of preferred stock.
From the time of Hutchinson’s retirement from the corporation until 1947, Bobie and Lockley were the only directors of the corporation, although the certificate of incorporation provided for three directors. They rotated the office of president and treasurer, each received a salary of $7,500 a year and each received a like bonus each year. In April, 1947, the Bobies voted their stock to elect Mrs. Bobie a director. At a meeting of the board of directors in November of 1947, Bobie and Mrs. Bobie as directors voted resolutions which among other things decreased Lockley’s salary from $7,500 to $100 a year, terminated his weekly travel allowance of $25 per week and terminated his authority to transact any business in the corporation’s name or to sign checks as treasurer drawn against the corporation’s *294 account. At the next annual meeting in April, 1948, Kenneth Robie was elected secretary-treasurer. Lockley was thus ousted both as treasurer and employee of the corporation. All offices of the corporation were then held by the Robies.
Lockley brought this action seeking to be restored to his former status in the corporation. He based his right to be so restored upon Robie’s alleged violation of two agreements: (1) a written agreement dated May 31, 1940, between Lockley, Robie and Hutchinson and the corporation wherein it was agreed among other things that the ownership of 150 shares of the corporate stock would cany with it the right to hold an office in the corporation; (2) upon an oral agreement alleged to have been entered into between Lockley and Robie on or about August 1,1941, to the effect that upon the sale of the farm and the farm implement business to Hutchinson in return for his stock that then Lockley and Robie would be employed by the corporation and share in the corporation on an equal basis and that any outstanding stock of the corporation that might be acquired in the future would be purchased for the treasury of the corporation. The Special Term has found that both of such agreements were in force and effect; that the purchase of the outstanding stock by Robie and the placing of the same in his own name and that of his wife and son rather than turning them into the treasury of the corporation was in violation of the oral agreement. The judgment appealed from directs that George F. Robie, Ruby H. Robie and Kenneth Robie deliver over to the corporation such shares of stock for deposit in its treasury, and authorizes the corporation to reimburse George F. Robie for the purchase price of said shares. It adjudges that the election of Mrs. Robie and later Kenneth Robie as directors was invalid; that all resolutions adopted by the board of directors at its November, 1947, and subsequent meetings should be vacated and that the plaintiff Lockley should be restored to his position as treasurer of the corporation and his salary and authority as treasurer should be reinstated and continued as of that date, and further directs that the board of directors within ten days meet and adopt a resolution providing for the payment forthwith of an 8% dividend on the preferred stock for the years 1930 to 1934.
As already mentioned the plaintiff relies in part upon the written contract of May 31, 1940. That contract among other things provided in paragraph II thereof that “ The ownership of 150 shares of preferred and 150 shares of common stock in said corporation shall carry with such ownership, a directorship in said corporation together with the right of holding one of the *295 three offices of said corporation ”. The record does not disclose what, if anything, the parties did in compliance with any of the terms of that contract, nor does it definitely appear whether Bobie and Lockley did anything to keep the contract alive as between them after Hutchinson sold his stock and resigned as an officer of the corporation. But assuming, without deciding, that the contract remained in force, Lockley, by virtue of it would at most be entitled to retain the office of director of the corporation. That part of the contract purporting to give him the right to hold one of the three offices in the corporation would be unenforcible. Mrs. Hutchinson and Mr. Petty owning a total of thirty-four shares of the capital stock were not parties to the agreement. That part of paragraph II which provides that ownership of 150 shares of preferred and 150 shares of common stock shall carry with it the right to hold one of the three offices in the corporation contravenes section 27 of the General Corporation Law and section 60 of the Stock Corporation Law as unduly fettering the discretion of the board of directors, and is therefore unenforcible (Manson v. Curtis, 223 N. Y. 313; McQuade v. Stoneham, 263 N. Y. 323; Fells v. Katz, 256 N. Y. 67; Rochester v. Bergen, 265 App. Div. 547, affd. 291 N. Y. 656; Long Park, Inc., v. Trenton-New Brunswick Theatres Co., 297 N. Y. 174). Clark v. Dodge (269 N. Y. 410) is not an authority to the contrary because in that case all of the stockholders were parties to the agreement.
Again, if the alleged oral agreement of August 1, 1941, was established by the evidence, Bobie would be obligated to surrender the shares later purchased by him into the treasury of the corporation. The voting strength would then be equally divided between Lockley and Bobie. The existence of an oral agreement of this importance should, however, be evidenced by clear proof. The testimony offered to support the alleged agreement is, as we view it, neither clear nor convincing. Moreover if the minds of Bobie and Lockley ever did meet upon such an agreement, still there was no corporate approval of the proposed plan. It is significant that when Petty’s stock certificate for fourteen shares was returned and cancelled on January 30,1943, Mr. Lockley, as president executed a new certificate for ten shares of common stock to George F. Bobie and also a certificate for four shares of common stock to Buby H. Bobie. Lockley’s act as president in issuing the certificates for the Petty stock to Bobie and Bobie’s wife in January, 1943, was inconsistent with the alleged agreement which he now relics upon. He is in a posi *296 tion now of seeking to have his own act of issuing these certificates declared null and void, and of seeking enforcement of the alleged agreement which he apparently abandoned. Lockley makes no explanation that he was tricked or coerced, or that the issuance of the stock certificates was anything other than his free and voluntary act. His conduct lends support to Eobie’s claim that no such agreement was made. If such an agreement was made we cannot construe Hockley’s action as being any other than an intentional relinquishment of a known right (see Alsens Amer. Portland Cement Works v. Degnon Contr. Co., 222 N. Y. 34, 37; Young v. Hunter, 6 N. Y. 203, 206). The party who causes or sanctions the breach of an agreement is thereby precluded from recovering for its nonperformance (Patterson v. Meyerhofer, 204 N. Y. 96, 100).
Courts will not ordinarily make determinations as to whether or not corporations shall declare dividends. The internal management of a corporation rests within the sound discretion of its board of directors. Only in those instances where it is shown that the refusal to declare dividends is harmful to the corporation and its stockholders generally have the courts departed from the general rule (City Bank Farmers Trust Co. v. Hewitt Realty Co., 257 N. Y. 62).
The corporation has been using its surplus profits to expand its business operations. The inferences are that plaintiff approved this policy up until the directors meeting of November, 1947, when he was deposed as an officer of the corporation. The directors are bound to exercise an honest discretion for the best interests of the corporation and all of its stockholders. While it has been held that the directors may not needlessly and improperly refuse to declare dividends to the stockholders (City Bank Farmers Trust Co. v. Hewitt Realty Co., supra, p. 67) still we think that upon this record the question of whether they have needlessly and improperly so refused, together with the question of whether or not such a declaration of dividends would be to the best interest of the corporation and all of its stockholders, is a question of fact upon which reasonable minds might differ. In that situation the court is not authorized to step in and order a declaration of dividends. We cannot say from this record that the refusal of the directors to declare dividends was arbitrary or in bad faith.
The judgment so appealed from should, therefore, be reversed on the law and the facts, without costs of this appeal to any party, and the complaint dismissed, without costs.
*297 All concur. Present — Taylor, P. J., McCurn, Love, Kimball and Piper, JJ.
Judgment reversed on the law and facts, and complaint dismissed, without costs of this appeal to any party. Certain findings of fact disapproved and reversed, and new findings made.