In the Matter of the Arbitration between BENJAMIN BURKIN et al., Appellants, and JOSEPH KATZ, Respondent.

First Department, December 13, 1955.

*Abraham Kaplan* for appellants.

*Irving Levine* of counsel (*Ernest Swiedler* with him on the brief; *Irving Levine*, attorney), for respondent.

BREITEL, J. In this proceeding, petitioners appeal from a denial of a stay of arbitration. The denial should be affirmed.

Dispute arises under stockholders' agreements governing two close corporations. The agreements contain broad arbitration clauses, relating to any arbitrable controversy that may arise among the sole stockholders by reason of the terms of the agreements or by reason of any other cause. The issue is whether the matters to be arbitrated come within the agreements for arbitration and whether they are, as a matter of law and policy, arbitrable.

The principals in each corporation are one Burkin and one Katz. They, through separate corporations, buy vacant land, construct one-story buildings thereon and, after a period, sell the properties.

In the present proceeding there are involved two corporations. The first, the Fulton-Washington Corp., organized in 1950, owns a property in Hicksville. Katz owns 45 of its 100 shares and Burkin owns the balance of 55 shares of stock. The second corporation, 370 Fulton Avenue Corp., organized in 1952, owns a property in Hempstead. In this corporation Katz

owns 22½ shares of its 50 shares of common stock and Burkin owns, with his son, the balance of 27½ shares. The stockholders' agreements, using the provisions of section 9 of the Stock Corporation Law, require all directors to be present at meetings to constitute a quorum and provide for unanimous agreement both by stockholders and directors in the taking of any action. They also provide that the officers and directors shall be elected as provided in the agreements. No officer. or director may be removed except after receipt of resignation.

The principals have fallen out with one another, following a series of disputes, some of which have resulted in litigation. In a companion appeal, affirmed by this court, Special Term directed the reinstatement of Katz, the minority stockholder, as the president and director of each of the corporations, on the ground that he had been summarily removed by the majority stockholder in violation of the stockholders' agreements. (*Matter of Katz* [*Fulton-Washington Corp.*], 1 A D 2d 658.) Under other companion appeals, various issues are being submitted to arbitration bearing on the charges and countercharges between the principals in the conduct of the businesses of the corporations. (*Matter of Burkin* [*Katz*], 1 A D 2d 655.)

Katz, the minority stockholder, who had been ousted, and then reinstated, as an officer and director, has now turned the tables. He seeks to remove the majority stockholder and his son as officers and directors, not by summary act, but by arbitration under the stockholders' agreements. The issue framed for the arbitrators, with respect to the Fulton-Washington Corp. reads as follows: " 1. That by reason of alleged misconduct in office and the commission of acts prejudicial to the welfare of the Fulton-Washington Corp., Benjamin Burkin be removed as an officer and director thereof. 2. That by reason of alleged misconduct in office and the commission of acts prejudicial to the welfare of the Fulton-Washington Corp., Leonard Burkin be removed as an officer and director thereof." Identical issues are phrased with reference to the 370 Fulton Ave. Corp.

The question generally, then, is whether members of a close corporation operating under a unanimity agreement may submit to arbitration the misconduct and breach of duty by corporate officers and directors and thus, despite the unanimity agreement, obtain their removal.

Considered against the background of traditional corporate law, the issue may seem a strange one, but the law applicable to close corporations has moved in measured, but nevertheless

significant, strides. There was the time when such corporations were legally regulated by the principles applicable to widely held corporations. Analogy was freely made to the structure of political government, with its deliberative legislative body and delegated fiduciaries. The earlier cases held that it was against public policy for stockholders, by agreement among themselves, to control directly the delegated discretion and fiduciary responsibility of boards of directors. (*Manson* v. *Curtis,* 223 N. Y. 313; *McQuade* v. *Stoneham,* 263 N. Y. 323; *Clark* v. *Dodge,* 269 N. Y. 410.) Although each of these cases successively enlarged the permissible area for stockholders' agreements, the final freedom of judgment of corporate directors was retained. Nevertheless, it was recognized that the power to control the selection of directors meant, in fact, the power to control the policies of the men selected. By the time the *Clark* case was decided, the right of sole stockholders, by prior agreement, to control the selection of directors, but not their management policy, was made clear and indisputable.

There remained, however, a need for still greater control in the close corporation. Businessmen, with the aid of their lawyers, struggled to establish such control. At the same time, it was sought to retain the advantage of corporate organization, involving, as it does, survival after death of a member and limited liability for debts. The device of requiring unanimity in actions by boards of directors was hit upon. But, when an agreement providing for such unanimity was litigated, the Court of Appeals, by a closely divided court, struck down the arrangement as illegal and in violation of public policy. (*Benintendi* v. *Kenton Hotel,* 294 N. Y. 112.) In striking down the agreement the majority held: '' But this State has decreed that every stock corporation chartered by it must have a representative government, with voting conducted conformably to the statutes, and the power of decision lodged in certain fractions, always more than half, of the stock. That whole concept is destroyed * * * by * * * provision as to unanimous action '' (p. 118).

The *Benintendi* case was decided in 1945. In 1948, section 9 of the Stock Corporation Law was amended to authorize unanimity agreements in corporations (L. 1948, ch. 862; 1948 Report of N. Y. Law Revision Commission, p. 381 *et seq.* See, also, 1951 Report of N. Y. Law Revision Commission, p. 251 *et seq.*). Another major step had been taken in the direction towards giving the members of a close corporation wide power to do with the corporation as they would, so long as creditors, the public, and government were not adversely affected.

Concomitant, however, with this development has loomed a greater need to resolve disputes among the members of a close corporation, without destroying the corporation or forcing a dissolution.* A dissolution may be to the disadvantage of the member who is not, or may not be, in funds to bid for the assets at the corporate sale. An attempted answer has been supplied by lawyers for businessmen who have included broad arbitration clauses in the stockholders' agreements.

In the instant case, the sole owners of the corporations have chosen in advance to settle their internal corporate disputes by arbitration. The awards in such an arbitration will bind none other than the parties to it. A different situation and a different public policy question would be presented if public stockholders were involved, even if perchance their formal consent to an arbitration clause were obtained in advance.

To begin with, a unanimity agreement among stockholders, like any other agreement, can be breached — and in a variety of ways. One of these ways is, certainly, by grave misconduct — amounting to faithlessness — of the officer-director-stockholder. A fundamental principle has been that, despite any provision in the stockholders' agreement, there is always an implied term that an officer or director is obliged to keep the agreement on his part faithfully and to act as a trustee for the stockholders (*Fells* v. *Katz,* 256 N. Y. 67). In the *Fells* case, Fells' removal as an officer and director was sustained despite the fact that there was a stockholders' agreement and by-laws of the corporation, none of which provided for removal of a director or officer before the end of his term. The principle of the *Fells* case is unquestioned and, of course, makes good business and good moral sense.

Given, then, the principle that a stockholder, in his capacity and by his conduct as officer and director, may breach a unanimity agreement, the question is what is the remedy of the nonbreaching stockholder. Such a stockholder can take it upon himself to remove the wrongdoing officer and director, if he has sufficient votes. This procedure was recognized in *Matter of Landersman (Selig)* (280 App. Div. 963) where this court held that an arbitration agreement would be enforced to resolve the question whether a corporation officer and director had been properly removed. That case was, as to procedure, the converse

---

* See O'Neal, Resolving Disputes in Closely Held Corporations: Intra-Institutional Arbitration, 67 Harv. L. Rev. 786.

of this one, except that there was no unanimity agreement. In the *Landersman* case the officer and director had been first removed. He then sought arbitration of whether he had been properly removed. This court held the issue of his removal — the very issue in this case — an arbitrable question. But, here, the procedure sanctioned in the *Landersman* case is not available to Katz. This is so because there is the unanimity agreement and the provision maintaining both Burkin and Katz in office. Thus, in the companion appeal to this case, referred to earlier, we have held that Burkin had no right, unilaterally and summarily, to remove Katz, despite the fact that he held the majority of the voting stock, because it violated the stockholders' agreement which fixed Katz in office. In other words, the procedure resorted to by the parties in the *Landersman* case is not available to the principals in this case because part of the agreement in this case, not present in the other, controls the election and tenure of officers and directors.

Another remedy which comes to mind is an action for a declaratory judgment. But, in *Jos. H. Carter, Inc.*, v. *Carter* (205 Misc. 192, affd. 283 App. Div. 858), this court held that a party subject to a unanimity agreement in a close corporation could not obtain a declaratory judgment that an officer and director had been faithless and guilty of such misconduct as to require his removal.

Section 60 of the General Corporation Law authorizes a judicial proceeding to remove a corporate officer or director, but, under section 61 and the exceptions provided therein, such actions may be brought only by the Attorney-General of the State. Obviously such a remedy with respect to the ordinary close corporation is not practically available.

How then is a faithless officer or director removed in a close corporation governed by a unanimity agreement? We have seen that the nonbreaching stockholder cannot act summarily and unilaterally to remove a director, even if he control a majority of the votes. We have also noted that he cannot obtain a declaratory judgment. The General Corporation Law does not empower him to bring an action for the removal of such a faithless officer and director. The parties have provided in their agreement for such an issue to be arbitrated. To be arbitrable an issue need only be justiciable. (Civ. Prac. Act, § 1448; *Matter of Kallus* [*Ideal Novelty & Toy Co.*], 292 N. Y. 459.) In the absence of the arbitration clause and the agreement

for unanimity and maintenance of office, the issues of misconduct by a corporate officer and director would certainly be justiciable, albeit the controversy would have to be precipitated in the first instance by his actual removal.

It is concluded, therefore, that the arbitration sought in this case is an effective remedy. No special problem arises with respect to enforcement of an award rendered by arbitrators. That there are risks in placing such grave responsibilities in the hands of arbitrators is obvious. But those risks were willingly assumed by the parties, who had the right to do with their property as they would, so long as neither creditors nor the public was adversely affected. Moreover, we must assume that arbitrators will perform their duties properly, even as we do with a jury obligated only to return a general verdict. Removal would be a drastic remedy, and we must assume further that arbitrators would recognize that, and require both substantial grounds and clear evidence to support such grounds. Such evidence we do not now have before us, but that will be the burden of Katz in the proper forum, both to specify and prove.

With insignificant exceptions, the precedents do not run counter to this view. In *Matter of Diamond* (*Diamond*) (80 N. Y. S. 2d 465, affd. 274 App. Div. 762), the holding, as distinguished from the dictum, was that the pre-incorporation contract providing for arbitration was intended to cover only the relationship among the stockholders, *inter se*. Moreover, the case was decided before section 9 of the Stock Corporation Law was amended. *Martocci* v. *Martocci* (42 N. Y. S. 2d 222, 223, affd. 266 App. Div. 840) is quite applicable. There the arbitration agreement was enforced. The matter submitted to arbitration was referred to as " the propriety of the action of the board of directors." *Matter of Allied Fruit & Export Co.* (243 App. Div. 52) is a contrary holding, but it was decided in 1934 and relies on the *McQuade* (263 N. Y. 323, *supra*) and *Manson* (223 N. Y. 313, *supra*) cases. Moreover, the *Allied Fruit* case no longer retains its vitality since the decision of this court in *Matter of Landersman* (*Selig*) (280 App. Div. 963, *supra*).

It is suggested that the members of a close corporation who cannot agree always have the remedy of dissolution. Apart from voluntary dissolution, there is the special provision for dissolution in the event of deadlock (General Corporation Law, § 103; see 1951 Report of N. Y. Law Revision Commission, *supra*). Experience has shown, however, that dissolution under that section is not automatic and is not as easily available as might be inferred. But, more important than this is the fact

that dissolution may frequently be a remedy that is no remedy at all. If the wrongdoer in a close corporation is in a position to squeeze the innocent party into a forced sale of the corporate assets, he will accomplish, perhaps, the very purpose of his wrongdoing. Indeed, this very situation was once before this court and this court stayed a dissolution proceeding until an arbitration could be had under the provisions of the stockholders' agreement. (*Matter of Zybert* [*Dab*], 276 App. Div. 1070, affd. 301 N. Y. 632; see, also, *Matter of Myers* [*Leibel*], 304 N. Y. 656.) Indeed, in the *Zybert* case, this court framed the issue as " Whether the demand for the sale and the steps tending to dissolution were made in bad faith and as part of a plan to oust appellant from the business improperly, under the facts herein disclosed, should be issues for the arbitrators."

It is also suggested that a derivative stockholders' suit can be brought. But this remedy would not result in removal of the offending and faithless officer and director, so long as the stockholders' agreement and voting control remain as they are. The most that could be obtained would be provable damages payable to the corporation being presumably impaired by the faithless officer and director. While a derivative action has potent value as a remedy against officers and directors of a widely held corporation, it is generally a clumsy, ponderous remedy in the close corporation situation, albeit an effective means of harassment. It should be noted too that in the *Fells* case (256 N. Y. 67, *supra*), despite a stockholders' agreement fixing the terms of office, the parties were not remitted to a derivative action, but were entitled to sue for the removal of the faithless officer and director. Thus, it is perfectly clear that a faithless officer-director-stockholder is removable from office despite any agreements. The only question is how this is to be accomplished. But again, in this case, the parties have chosen arbitration as a forum with respect to a justiciable issue; and it is neither wise nor just to preclude them from their own choice of forum selected before the occasion for litigation arose.

Significantly, it must be recognized that the business community, backed by the legislative expression of public policy, is refashioning the corporate structure to meet the needs of the closely held enterprise, with attributes of survival after death of any of its members and with limitation of liability. Unless there be some further legislative change to provide a remedy to remove faithless officers and directors in close corporations operating under unanimity agreements, there is now only available action of doubtful value. In the meantime, businessmen

and their lawyers are entitled to resort to arbitration as a mode of relief, the issues being justiciable, and, therefore, arbitrable.

The order should be affirmed.

PECK, P. J. (dissenting). In the setup of these corporations and relation of the members, as constituted by the parties, it seems to me inadmissible to submit to arbitration the removal of either party from his position in the corporations. The complaining party is not without a remedy. A derivative stockholder's action or arbitration is available to secure an accounting for any misconduct, or if the complaining party wishes to terminate the business relationship he may do so through a dissolution proceeding. But in view of their contract for an equal voice in the management of the corporations, it would not seem allowable, through the medium of arbitration, for one party to exclude the other from the management and gain exclusive control for himself. Nor does it seem feasible to determine or control the relation of the parties to the management in this way. I dissent and vote to reverse and grant the motion to restrain arbitration.

Cox and BERGAN, JJ., concur with BREITEL, J.; PECK, P. J., dissents and votes to reverse and grant the motion in an opinion in which BASTOW, J., concurs.

Order affirmed.