Marcus G. Christ, J.
These are proceedings brought to dissolve two corporations pursuant to article 9 of the General Corporation Law. The petitioners Benjamin Burkin and his son Leonard H. Burkin constitute a majority of the directors of both corporations and the holders of a majority of the stock issued and outstanding thereof. Benjamin Burkin and Joseph Katz are the principals in each of these corporations. Through corporations organized by them they buy vacant land, erect one-story buildings known as “ taxpayers ” and, after a time sell the properties. The proceedings now before the court involve two such corporations.
The first of these is Fulton-Washington Corp., organized in 1950, which owns real property improved with a “ taxpayer ” at Hicksville, New York. This corporation is customarily referred to by the parties as the “Hicksville Corporation ”. Its authorized stock consists of 200 shares of common stock without par value of which 100 shares are issued and outstanding. Burkin owns 55 of such shares and Katz owns the balance of 45 shares. The second corporation is 370 Fulton Ave. Corp. organized in 1952, which owns real property improved with a “ taxpayer ” in Hempstead, New York. This second corpora *279 tion is usually referred to by the parties as the “ Hempstead Corporation ”. Its authorized stock is the same as the Hicks-ville Corporation but only 50 shares are issued and outstanding. Burkin owns, with his son, Leonard H. Burkin, 27% shares and the balance of 22% shares is owned by Katz. Subsequent references to Burkin herein will be deemed to include both father and son, wherever such collective reference is appropriate.
Stockholders’ agreement affecting both corporations provides for: (a) unanimity of action by stockholders and directors in all matters requiring their actions; (b) nonremoval of officers under any circumstances except by voluntary resignation; (e) unanimity of stockholders’ action for any amendment of corporate by-laws; (d) repayment of moneys due from the corporations to Burkin and Katz only after payment or setting aside of a sufficient sum for payment of all corporate debts; (e) implementation of the agreements by inclusion of appropriate “ unanimity ” provisions in the certificate of incorporation pursuant to section 9 of the Stock Corporation Law; and (f) continued election of Benjamin Burkin, Leonard H. Burkin and Joseph Katz as directors and officers of the two corporations. These stockholders’ agreements contain broad arbitration clauses relating to any arbitrable controversy that may arise among the persons who constitute the sole stockholders by reason of the terms of the agreements or by reason of any other cause.
Whatever may have been the expectations of Burkin and Katz for corporate management based upon harmonious unanimity of action, they were short-lived. Despite their carefully planned chartered partnerships with provisions substituting the arbitration panel for the law court as the tribunal to resolve disagreements, the principals have been embroiled in continuous litigation since 1953. Ironically, most of such litigation has been concerned with which disputes are arbitrable and which are not. A bare enumeration of the times one side or the other has resorted to our courts since 1953 would indicate the litigiousness which has been the chief characteristic of these ventures, but it would not place in true perspective the intransigent hostility of the warring principals which has produced the paralysis from which these corporations suffer. The court is painfully aware of the fact that the litigation of the principals thus far has consumed the time and efforts of not less than six Justices sitting in Special Term, has involved one appeal to the Appellate Division of the Second Department, four to the Appellate Division of the First Department, and one appeal to the Court of Appeals. To this extraordinary record can now be added the present application for dissolution and the countermove *280 to stay such, proceeding pending arbitration which, it may not be amiss to observe, may well lead to a further appeal. Because this court is firmly convinced that nothing demonstrates so persuasively the lack of any reasonable prospect for future harmonious management of these corporations by their principals as their own record of performance, it chooses to set forth what has crystallized out of the legal conflicts in which the principals have engaged.
Burkin and Katz fell out in 1953. Out of this disagreement came the first demand for arbitration initiated by Burkin and dated December 21,1953. On a motion by Katz to stay arbitration and a cross motion by Burkin to compel it, the latter prevailed at Special Term but on appeal to the Appellate Division, Second Department, the scope of arbitration was limited to a single item affecting only the Hicksville Corporation and relating to the matter of repayment of loans made by Burkin to the Hicksville Corporation. Arbitration was denied on the matters pertaining to the sale of the real property owned by the two corporations and as to another matter not now material (Matter of Katz [Burkin], 283 App. Div. 1092). This determination was affirmed by the Court of Appeals without opinion (Matter of Katz [Burkin], 308 N. Y. 789). The order of the Court of Appeals was made the order of this court on March 11, 1955. Thus, at that point arbitration was directed to proceed on the question of repayment of Burkin’s loans to the Hicksville Corporation. Except for each side’s designation of an arbitrator, nothing has occurred to advance the arbitration of this issue.
Instead of proceeding to arbitrate Burkin, by notices dated March 18, 1955 called special stockholders’ meetings of both corporations for April 6,1955 for the stated purpose of electing directors. In spite of Katz’ protest in writing that such meetings were called in violation of controlling agreements and his absence from the meetings, Burkin proceeded with the meetings and Katz was removed as an officer and director from both corporations and the vacancies thus created were filled by selection of someone else. At the meetings of the Hicksville Corporation when nominations for directors were in order, Burkin made a statement for the record in which he charged that since 1953 he had become increasingly aware of the fact that Joseph Katz had been unfaithful to his duties and responsibilities as an officer and director of the corporation, and had acted for his own interests contrary to the best interests of the corporation. As alleged examples of faithless conduct he accused Katz of having misled his fellow officers and directors as to his position concerning the future conduct and affairs of the *281 Hicksville Corporation in order to extract an agreement providing for the payment of a commission of $9,500 to his son, Norman Katz; of failing and refusing to account to the corporation for corporate funds which found their way into his possession; of having usurped or attempted to usurp complete management and control of the corporation and, having usurped management, of having rendered a bill for services allegedly performed by him without warrant in law or in fact or without consent or approval of the board of directors; and of having demanded that compensation be fixed for him for services which he might render in the future in connection with such usurped powers. On the basis of these accusations, Burkin stated Katz did not warrant election as a member of the board. A similar statement was made by Burkin at the meeting of the Hempstead Corporation.
A proceeding brought in New York County by Katz in May, 1955 resulted in an order of Mr. Justice Steuer on June 17, 1955 adjudging the action taken at the meetings on April 6, 1955 in violation of the stockholders’ agreement and therefore void. This determination was appealed to the Appellate Division, First Department, and was pending undetermined when the present dissolution applications were presented to this court. On December 13, 1955 the order of Mr. Justice Steuer was affirmed without opinion (1 A D 2d 657, 658). Thus, Katz was reinstated as an officer and director of both corporations.
While the last-mentioned litigation was in progress other developments occurred. At the same time Katz protested in writing against the special meetings called to elect directors, he served upon Burkin a demand for arbitration concerning 11 items and dated April 5, 1955, one day before the scheduled time for such special meetings. The demand embraced a variety of matters. In May, 1955 Burkin moved in Nassau County to stay arbitration under the April 5th demand and Katz countered Avith a cross motion to compel arbitration. Under date of May 2, 1955 Katz served another demand for arbitration applicable to both corporations in which he demanded arbitration of his charge that Burkin and his son be removed as officers and directors “ by reason of alleged misconduct in office and the commission of acts prejudicial to the welfare ’ ’ of both corporations. Burkin again moved in Nassau County to stay arbitration and Katz cross-moved to compel arbitration under the May 2d demand. These motions, like their companions pertaining to the April 5th demand, were transferred to New York County by Mr. Justice Coxroy. Both sets of motions were heard before Mr. Justice Saypol and from his *282 determination in August, 1955 appeals were taken to the Appellate Division, First Department, and heard at the October, 1955 term with decisions rendered on December 13, 1955 (Matter of Burkin [Katz], 286 App. Div. 740; 1 A D 2d 655). Before these appeals were heard Burkin served a further demand for arbitration dated September 8, 1955 which became the subject of a motion in New York County by Katz to stay arbitration countered by the usual cross-motion by Burkin to compel arbitration. These motions affecting the September 8th demand were heard by Mr. Justice McGiveett.
To add to the already complicated situation, Burkin initiated a new move. By notices of motion dated September 8, 1955, the very same date as Burkin’s last-mentioned demand for arbitration, Burkin commenced the proceedings now before this co art to dissolve both corporations pursuant to article 9 of the General Corporation Law.
At this point the court must pause to recapitulate what has been determined by all the litigation which has preceded the applications for dissolution. Katz has been restored to office in both corporations. The Court of Appeals, affirming the Appellate Division, Second Department, has ordered arbitration of the matter of repayment of Burkin’s loans to the Hicksville Corporation. The Appellate Division, First Department, has ordered arbitration to proceed on 3 of the 11 items originally demanded and these, identified by their original numbering in the demand dated April 5, 1955, are: (1) that all securities under leases made by and between tenants of both the Hicksville Corporation and Hempstead Corporation be deposited in special trust accounts for the benefit of all of said tenants, pursuant to law, as in such cases made and provided; (9) that the Hicksville Corporation and the Hempstead Corporation pay to Joseph Katz, the sum of $7,500 for miscellaneous services rendered to and for the said corporations; and (11)° that Benjamin Burkin and Leonard H. Burkin be compelled to account and pay over any and all sums obtained by them or their nominees with respect to loans procured by them as officers and directors of the Hicksville Corporation and the Hempstead Corporation, which loans were made to the said corporations ostensibly by a relative of Abraham Kaplan, Esq., attorney for Benjamin Burkin and Leonard H. Burkin. The Appellate Division, First Department, has ordered arbitration to proceed on Katz’ demand of May 2d that the Burkins both be removed as officers and directors of both corporations by reason of alleged misconduct in office and the commission of acts prejudicial to the welfare of the corporations.
*283 By a decision on or about January 24, 1956 (Matter of Katz [Burkin], 151 N. Y. S. 2d 240) Mr. Justice McGivem has directed arbitration to proceed on Burkin’s September 8th demand with respect to the Hicksville Corporation and the question of Katz being required to account and pay over to the corporation $13,000 which it paid to Katz’ son for services allegedly performed in arranging mortgage financing and which found its way into Katz’ possession. With respect to the Hempstead Corporation, Mr. Justice McG-jverít has directed arbitration to proceed on Burkin’s September 8th demand that Katz be required to account and pay over to the corporation $2,000 paid by it to Katz’ son for services allegedly performed in arranging mortgage financing and which found its way into Katz’ possession. Finally, by demand dated December 24, 1955, Burkin has demanded that in addition to all other items already ordered for arbitration there be added the matters of payment to the Burkins for services rendered by them to the corporations provided the arbitrators determine that Katz is entitled to compensation for miscellaneous services rendered by him; and provided that no order shall have been entered directing dissolution of the corporations by the time the arbitration hearings are held and provided further that the determination of the Appellate Division, First Department, directing arbitration of the question of the Burkins’ removal as officers and directors shall remain unchanged, then there shall be arbitrated the question of Katz’ removal as an officer and director of both corporations by reason of his misconduct, his infidelity to the corporate interests, violations of his fiduciary obligations to the corporations and his commission of acts prejudicial, detrimental and damaging to the interests of the corporations.
The court now comes to the precise question presented for determination which is Katz’ motion to stay Burkin’s application for dissolution. Dissolution has been a matter about which the parties disagreed as far back as October, 1953 when special meetings of stockholders and directors of both corporations were called to consider resolutions, which if they had been adopted, would have caused the corporations to proceed to voluntary dissolution pursuant to section 105 of the Stock Corporation Law. Yet, never in the long record of resort to the courts has either faction applied to the court to direct dissolution until now. Everything which has preceded Burkin’s present application for dissolution has been concerned with arbitration of specific disagreements between the parties. Although they evidently long since disagreed as to dissolution, they have not seen fit to attempt to demand arbitration on this issue and *284 this, to the court is not without significance. Up to now underlying the efforts of both sides to arbitrate the numerous disagreements between them has been the idea that the corporations would continue to function. The business conducted by each corporation is, fortunately for the principals, of such a relatively simple type that profitable returns have been possible despite the deadlock in the board of directors and between the stockholders. However, the accumulation of arbitrable items, as indicated in the review already set forth, gives clear warning of the futility of expecting anything but a continuous stalemate if the principals are to attempt to manage these corporations. That this is the dismal outlook for these corporations has already been suggested in the decision of the Appellate Division in passing upon Katz’ April 5th demand for arbitration. In Matter of Burkin (Katz) (1 A D 2d 655) the court said: “ It is permissible and appropriate for parties, virtual partners in a close corporation, to contract to submit to arbitration disputes of a specific nature which might arise out of their relationship. But it is impossible to run a business through arbitrators or submit to arbitration matters of management policy.”
The court has carefully considered the decision in the companion appeal pertaining to Katz’ demand for arbitration dated May 2d and holding as arbitrable the question of removal of the Burkins from their posts as officers and directors (Matter of Burkin [Katz], 286 App. Div. 740). Were these dissolution proceedings initiated by the Burkins solely in their capacity as directors (General Corporation Law, § 101) the court would feel obliged to grant a stay because their very right to be directors is now posed as an issue for arbitration. But these proceedings are brought by the Burkins in 'their capacity as stockholders as well and the petition alleges the existence of a condition contemplated by section 103 of the General Corporation Law. In this controversy the charges of faithless conduct and wrongdoing are not restricted in their application to just one of the principals. Bach has made comparable charges against the other and each seeks to arbitrate the charges so made. If only one sustains his charges before the arbitrators, the other will be ousted from management leaving his erstwhile " partner ’ ’ in control. This is something which neither party contemplated wheh they embarked upon their business venture. It is possible that both principals might fail to persuade the arbitrators that removal of either one of them should be the determination. In such a case, the principals would be left to flounder in a helpless state of deadlock.
*285 Although the certificates of incorporation attached to the petition state that the duration of the corporation is to he perpetual, the principals contemplated no such infinite life. To the contrary, the modus operandi of these men was to form what the Appellate Division has characterized as a “ chartered partnership ” for the purpose of improving vacant parcels of real property and selling them at a profit. They contemplated as an integral part of their plan the dissolution of the corporate vehicles by which they carried out such a business venture. Here we are dealing with a situation quite different from those close corporations in which indefinite continuance of business operations is reasonably to be anticipated. Destruction of these corporations by dissolution would not represent the drastic remedy it might be for corporations differently situated.
By its adoption of section 9 of the Stock Corporation Law, the Legislature permitted ‘' a stock corporation, by its certificate of incorporation or an amendment thereof, to impose requirements as to quorum or vote, of directors or stockholders, in excess of the requirements that would be applicable by operation of law”. (See 1951 Report of N. Y. Law Rev. Comm., p. 259.) This authorization of superstatutory majorities was expected to be utilized by the type of corporation usually described as a “close corporation ”, that is, “the corporate entity typically organized by an individual, or a group of individuals, seeking the recognized advantages of incorporation, limited liability, perpetual existence and easy transferability of interests — but regarding themselves as partners and seeking veto powers as among themselves much more akin to the partnership relation than to the statutory scheme of representative corporate government ” (Israels, The Sacred Cow of Corporate Existence, Problems of Deadlock and Dissolution, 19 U. of Chi. L. Rev. 778). Section 9 of the Stock Corporation Law was enacted in 1948 on the recommendation of the Law Bevision Commission. In 1951 the commission presented recommendations for changes it felt were needed to cope with certain difficulties which had arisen under section 9. One of the recommendations was in the following terms:
“ Present section 9 provides that ‘ Nothing herein contained shall be construed to limit the power of a court of equity to decree a dissolution in a proper case.’ The statutes contain, however, no specific provisions for dissolution of a corporation in the situation of a deadlock resulting from the inability of directors or stockholders to satisfy special requirements, adopted pursuant to section 9, relating to votes of directors *286 necessary for conduct of business or number of votes of stockholders necessary for election of directors.
“ The Commission believes that General Corporation Law, section 103, which permits the court to order a dissolution in the event of a deadlock arising under the statutory requirements for directors’ action and for stockholder vote to elect directors, should be enlarged to deal with this situation. The amendment proposed by the Commission would permit a petition for dissolution in the event of such a deadlock of directors, or of stockholders entitled to vote for election of directors. It provides that the petition may be presented by the holders of such number of shares as represent more than the difference between the total number of shares having voting rights as to dissolution of the corporation without judicial proceedings and the number of shares, the holders of which must concur to effect a dissolution of the corporation without judicial proceedings. This provision is consistent with the present provisions of section 103 with regard to dissolution of a corporation in the case of deadlock.” (1951 Report of N. Y. Law Rev. Comm., pp. 262-263.)
Pursuant to this recommendation the Legislature enacted chapter 717 of the Laws of 1951 which added what now appears as the second subdivision of such section. Thus it is clear that the Legislature has recognized that use of superstatutory majorities by close corporations pursuant to section 9 of the Stock Corporation Law may well result in a condition of deadlock and stalemate. For this it has provided a specific remedy by enlargement of the provisions of section 103 of the General Corporation Law. Underlying the whole concept of the State-granted privilege of doing business in the corporate form is the idea that the corporate entity will be utilized to accomplish the stated purposes for which it was created. When by reason of refusal to meet on matters of business, unremitting quarrels, and personal animosity of the principals so great as to preclude hope for reconciliation the close corporation is brought virtually to a standstill, it is appropriate to consider whether the privilege of doing business should be withdrawn. The situation presented by the two corporations here involved appears to be one for which the amendment to section 103 was expressly designed.
It is to be noted that nothing contained in the certificates of incorporation operates to render inapplicable the provisions of section 103 of the General Corporation Law relating to deadlock arising from the inability of directors or stockholders to satisfy special voting requirements adopted pursuant to section 9 of the Stock Corporation Law. The stockholders ’ agree *287 ments themselves are silent on the matter of dissolution except in one portion where covenants against transferring stock are stated not to preclude surrender of the stock to the corporation. In the court’s opinion sufficient is set forth in the dissolution petitions to warrant their being entertained and to deny the motion for a stay pending arbitration of the matters other than dissolution (Matter of Cohen [Michel], 183 Misc. 1034, affd. 269 App. Div. 663, motion for leave to appeal denied 269 App. Div. 690, 294 N. Y. 639; Matter of Feingersh, N. Y. L. J., Sept. 22, 1952, p. 557, col. 2).
The applications for the appointment of temporary receivers for each of the corporations are denied at this time without prejudice to renewal in the future on facts showing the need for a receiver. The applications for dissolution are referred to an Official Referee with directions to conduct a hearing and to render a report in accordance with sections 113 and 114 of the General Corporation Law.
Settle orders on notice.