James B. McNally, J.
This is an application pursuant to section 25 of the General Corporation Law to set aside the election of directors of William Faehndrich, Inc., held on January 9, 1956.
Petitioner, 77 years of age, founded the business of the corporation in 1912. The certificate of incorporation was filed January 20, 1926. It provides for capital stock in the sum of $5,000 represented by 50 shares of the par value of $100 each. Prior thereto, since about 1912, petitioner had conducted the business in his own name. Petitioner transferred the said business to the corporation and received in exchange, therefor 50 shares of its capital stock, the entire authorized capital stock. On July 12,1929, a certificate of extension of the purposes of the corporation was filed with the Secretary of State to which is appended a verification by the petitioner as president and by his daughter Clara as secretary, reciting inter alia that the execution of the certificate had been duly authorized by the holders of all the outstanding shares of stock. On July 12, 1929, a certificate of increase of capital stock was filed whereby the authorized capital stock was increased to $100,000, consisting of 1,000 shares each in the sum of $100. Clause “ 6 ” of said certificate recites “ The number of shares issued and outstanding is fifty (50) shares of common ”. Petitioner alleges that the stock certificate book and the stock ledger were last in the safe of the corporation at its premises, 11 Harrison Street, borough of Manhattan, city of New York.
Petitioner’s oldest son Rudolph has been president of the corporation since 1941. Prior to the meeting complained of, petitioner was secretary and treasurer; he had received an annual salary of about $13,000 and his son Rudolph had received an annual salary of $17,500.
On or about April 20, 1953 at the request of Rudolph, and under circumstances indicating some reluctance on the part of the petitioner, he executed a certificate for 157 shares issued to him and, in addition, a certificate for 161 shares issued in the name of Rudolph. Admittedly, at the time of said issue no consideration passed concurrently from Rudolph to the corporation or to the petitioner.
Petitioner received by mail a notice dated December 28, 1955 of a meeting of stockholders to be held at the office of the corporation on January 8, 1956 which was thereafter supplemented by a notice dated December 29, 1955 fixing the date of meeting for January 9 instead of January 8, 1956. Petitioner did not attend the said meeting. Thereafter petitioner received by mail notice dated January 9,1956 advising him of the election *159 of Rudolph as president and treasurer of the corporation and his son’s wife as vice-president and secretary thereof. At the same time petitioner received a notice of the termination of his employment with the corporation as of January 13,1956. Since the latter date petitioner has received no compensation from the corporation.
The answering affidavit of petitioner’s son Rudolph, sworn to February 6,1956, disavows any differences between petitioner and himself. It evinces great concern on the part of Rudolph about management and control of the corporation following petitioner’s death.
The two certificates of stock, respectively, for 157 and 161 shares, were caused to be issued by Rudolph toward the end of perfecting and perpetuating control and managment of the corporation by Rudolph. Rudolph alleges differences of a pecuniary nature have arisen between himself and his brother Frederick. Rudolph sought petitioner’s intercession for the purpose of eliminating any present or future interest in the corporation on the part of Frederick. Dissatisfied with petitioner’s failure to respond, Rudolph called the special meeting of January 9, 1956 which resulted in the removal of petitioner as director, officer and employee of the corporation.
The by-laws of the corporation require a quorum of two thirds of the outstanding shares of stock of the corporation at meetings of stockholders. The required quorum did not attend the meeting of January 9, 1956. Respondent, however, argues that the by-law requiring an attendance of two thirds is invalid because contrary to the requirement of section 55 of the Stock Corporation Law which provides for the election of directors by a plurality of votes and for a quorum, as provided by the by-laws, but not exceeding a majority.
The petitioner alleges that he had no knowledge that the purpose of the meeting of January 9, 1956 was to remove him as director and officer and terminate the employment relation between himself and the corporation and, in addition, was unaware of the respondent’s purpose to proceed with the meeting on the premise that the requirement for a quorum of two thirds of the outstanding shares of the corporation was invalid. The papers in opposition corroborate the fact that petitioner was not advised as to the said purposes of the meeting of January 9, 1956. Furthermore, it is clear that respondent’s purpose to proceed with the meeting contrary to the said provision of the by-laws was intentionally concealed from petitioner.
A review of an election pursuant to section 25 of the General Corporation Law may not result in the ratification thereof if *160 “ the result is not free from suspicion, or is clouded in doubt ”. (Matter of Kaminsky, 251 App. Div. 132, 140, affd. 277 N. Y. 524.) The facts and circumstances herein impel the court to hold that justice demands that the election under review be vacated.
There is present between the petitioner and respondent the relation of father and son, one which requires a full and fair disclosure of all material factors bearing upon their transactions with each other as well as their relation and transactions with the corporation. (Robbins v. Robbins, 89 N. Y. 251, 253.) The respondent by concealment, trickery and device and without the slightest justification has brought about the removal of his father as an officer, director and an employee of the corporation, despite the fact that it was his father who founded the business and from whom emanates whatever rights the respondent may have to the shares of stock of the corporation allegedly owned by him. The mere statement of the result of the machinations of respondent, under the circumstances of this case, requires a reversal of the acts and proceedings which made them possible. Surely, under the circumstances of this case, with the background of long tenure of the petitioner as an officer and director of the corporation and the confidence reposed in the respondent by the petitioner, as evidenced by petitioner’s relinquishment of the management of the corporation to the respondent, the notice of the meeting to be held on January 9, 1956 did not, nor was it calculated to, carry home to the petitioner that it was the respondent’s purpose to remove the petitioner as officer, director and employee of the corporation and to deprive the petitioner of the income from the corporation which petitioner has received during its existence. We may assume for the purpose of this holding that the provision in the by-laws for a quorum of two thirds is invalid. Nevertheless, under the circumstances of this case, it was incumbent upon the respondent to make known to the petitioner that it was respondent’s purpose to attempt to remove the petitioner by reason and on the basis of the asserted invalidity of said by-law. Whether the invalidity assumed exists is not free from considerable doubt, considering the presence of a close corporation and the amendment of section 9 of the Stock Corporation Law, enabling provision in a certificate of incorporation of a quorum greater than a majority, which marks a departure from the public policy responsible for the holding in Benintendi v. Kenton Hotel (294 N. Y. 112). (See Matter of Burkin [Katz], 286 App. Div. 740, for a comprehensive discussion of the rights of stockholders of a close corporation.)
*161 It is not necessary to, and the court does not at this time, decide the validity or invalidity of the by-law in question. In either event it was incumbent on the respondent to plainly advise petitioner that the meeting of January 9, 1956 was to be conducted as if there were no such by-law. The importance and relevancy of the respondent’s position in regard to the by-law is made plain by the allegations of petitioner. Therefrom, it appears that petitioner claims ownership of a majority of the outstanding shares of stock of the corporation. Petitioner can successfully maintain his said position even if it be assumed that the issue of stock to the respondent on April 20, 1953, was valid and irreversible. This is so, by reason of the fact that petitioner claims ownership of 50 additional shares representing the original issue of the corporation. The latter issue is'corroborated by recitals in certificates filed with the Secretary of State, recitals in the minutes of the corporation and, as alleged by petitioner, by a stock certificate book and a stock ledger book maintained by the corporation and last seen by petitioner in the safe of the corporation. Under those circumstances, had petitioner been fully apprised of the true purpose of the meeting of January 9, 1956 he might have succeeded in defeating the resolutions passed thereat and controlled the election of directors. (See Matter of A. Bruder & Son, Inc., 302 N. Y. 52.)
The inescapable conclusion is that the purpose of the notice of the meeting was to lull the petitioner into a false sense of security and to discourage him from attending the meeting so that the hidden and secret purpose and scheme of the respondent might be carried out Avithout opposition. The election of January 9,1956 is vacated and annulled.
Settle order.