Matthew J. Jasen, J.
This is a proceeding for dissolution of Pivot Punch and Die Corporation, a domestic corporation under article 9 of the General Corporation Law. The question is whether the court should entertain or dismiss the application (§ 106).
This proceeding was commenced by the petitioner, John F. Kopczynski, owning 50% of the outstanding stock, by a petition and order to show cause why said corporation should not be dissolved. The petition gave notice to all the necessary persons as required by section 108 of the General Corporation Law, including Robert H. King, owning the other 50% of the outstanding stock.
The petitions and affidavits submitted by both stockholders, as well as the other respondents, disclosed the facts concerning this corporation. It is sufficient to state that the business was originally started in 1945 wholly owned by the petitioner, John F. Kopczynski; that subsequently, one of the respondents, Robert H. King, joined the corporation and obtained a 50% interest in the business; that for a number of years, the corporation prospered. Commencing late in 1951 and continuing through 1954, management and policy disputes between the two 50% stockholders became acute. This acute situation continued until June 29, 1955, at which time Roland P. Cercone, Edward H. Huntzinger, and James G. Deckert, acting as arbitrators pursuant to an arbitration agreement, entered into between the petitioner and respondent King on October 30,1954, announced their decision “that (Mr. Kopczynski’s) employment by the corporation, and all benefits accruing therefrom, be terminated immediately * * * In reaching this unfortunate and distasteful determination, the arbitrators are not unmindful of the initial contributions made by Mr. Kopczynski to the success of the corporation; nevertheless, by virtue of the duties imposed under the provisions of the arbitration agreement * * * they are bound and confined in their deliberations to the present status in which the principals have placed themselves ”.
Since that date to the present, the petitioner has had no voice in the management of the corporation, although stockholder meetings were called on October 15, 1954, September, 1957, and the most recent in September, 1958, for the purpose of *715 electing a new board of directors. At the last two stockholder meetings, a new board of directors could not be elected, since the petitioner and respondent King, having equal voting power, were deadlocked as they have been since 1954, and the directors elected when harmony prevailed, to wit, the three arbitrators referred to before, hold over.
Upon a proceeding for dissolution pursuant to article 9 of the General Corporation Law, because the stockholders are so divided that they cannot elect a board of directors, the petitioner must allege and establish the following:
1. That the stockholders are in fact so divided that they cannot elect a board of directors (§ 103).
2. That the dissolution will be beneficial to the stockholders (§ U7).
3. That the dissolution will not be injurious to the public (§ U7).
As to the first requisite, respondent King concedes that there is a deadlock of the two equal stockholders, but claims that dissolution of the corporation should be denied on the ground that there is no deadlock of the directors. The court does not concur with this view. Section 103 of the General Corporation Law allows dissolution, either if the corporation ‘1 has an even number of directors who are equally divided ” or “ stockholders are so divided that they cannot elect a board of directors ”.
The next requirement is that the petition allege that the dissolution will be beneficial to the stockholders. It is undisputed that the respondent King is receiving a substantial return for his services to, and investment in, the corporation, and the petitioner, having been discharged from his corporate office, is receiving nothing. Respondent is and has been controlling the corporation policies for more than four years, and the petitioner, although owning 50% of the stock, has absolutely no voice in any policy, management or decisions of the corporation.
In determining what is beneficial to the stockholders, the court must take into consideration the type of corporation we are dealing with in this case. We have here what is generally referred to as a close corporation, ‘ ‘ one that has been organized by an individual or a group of individuals seeldng the recognized advantages of corporations * * * but regarding themselves basically as partners” (1948 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1948, No. 65K], p. 389 et seq.).
It must be conceded by all concerned that in effect, the Pivot Punch and Die Corporation is a close corporation and, being a close corporation, it is simply a partnership consisting of Mr. Kopczynski and Mr. King, clothed with the benefits peculiar *716 to a corporation, limited liability, perpetuity and the like. It would be mere prolixity to substantiate such a conclusion by quoting decisions in this and other States. The United States Government, in its Technical Amendment Act of 1958 has acknowledged the kinship of a close corporation vis-á-vis a partnership by permitting, in a situation such as before this court, the stockholders to file and pay income taxes as though they were in fact partners. Obviously, the United States has concluded that a close corporation is in effect a partnership.
It is well established that a partnership may be dissolved at any point or by any partner or by the court where a partner’s conduct is harmful. (Partnership Law, §§ 62, 63, subd. 1, pars, [c], [d].)
In addition to the technical rules surrounding a partnership and perhaps from a purely moral point of view, more important, there exists between partners the highest degree of fidelity, loyalty, trust, faith and confidence. When these characteristics in a partnership cease, then the true partnership ceases, and when these characteristics cease between owners of equal, or verily, substantially equal, shares in a close corporation, the close corporation ceases to be beneficial to the deadlocked stockholders. In the opinion of this court, the benefit to the stockholders within the meaning of article 9 of the General Corporation Law, is adequately alleged.
The last requirement is an allegation that dissolution will not be injurious to the public. This, of course, does not mean that the dissolution must be beneficial to the public. In any event, the petition alleges both that dissolution would not be injurious to the public and would, in fact, be beneficial. It appears that at the time the petitioner was active in the affairs of the corporation, the total number of employees was approximately 300, while the present employment is about 70. The respondents allege that the dissolution would be injurious to the public because the remaining employees would be discharged. The court does not believe, at least at this time, that such a result would follow.
The respondents rely on Matter of Radom & Neidorff, Inc., (307 N. Y. 1). In the opinion of this court, there is a difference in facts between the cases. There, a widow who had no knowledge of the business, was the respondent, and the person actively running the business was the petitioner. The widow alleged that the petitioner threatened to have the corporation dissolved and buy it in, or if she should be the purchaser, to start a competing business. It must be noted that the widow was not the petitioner, but was the respondent opposing the *717 dissolution. It must be noted that only five months elapsed after death of the owner of 50% of the stock (respondent’s husband) when petitioner, the other stockholder, instituted the proceedings. From this, the Court of Appeals found that: “ There is no stalemate or impasse as to corporate policies; * * * that the corporation is not sick but flourishing; * * * that dissolution is not necessary for the corporation or for either stockholder” (p. 6, emphasis supplied).
In this instance, the situation is just the opposite. The petitioner alleges a stalemate; that the corporation is weak and declining and that dissolution is necessary for the good of the stockholders and the public. In the Radom & Neidorff, Inc., case (supra, p. 7) the court dismissed the proceeding “ without prejudice, however, to the bringing of another proceeding should deadlock in fact arise in the selection of a board of directors at a meeting of stockholders to be duly called, or if other deadlock should occur threatening impairment or in fact impairing the economic operations of the corporation.”
Here, the deadlock and dissention have not only occurred, but it is conceded by both the petitioner and the respondents that it has been of long standing. In the opinion of this court, a sufficient showing has been made by the petitioner that this is a case where dissolution is or may bo appropriate under section 103 of the General Corporation Law. Under the circumstances presented, petitioner has made the required prima facie showing to justify the appointment of a Referee herein.
The motion is granted to the extent of appointing a Referee pursuant to article 9 of the General Corporation Law to hear the allegations and proofs of the parties, determine the facts, and to render his report to this court, pending which the application is held in abeyance.
The order to be submitted herein will provide for the appointment of a Referee as hereinbefore provided and will further provide that pending the final determination of this dissolution proceeding, John Kopczynski will be enjoined from prosecuting the actions commenced by him in the Counties of Erie and Niagara as well as any other action or proceeding affecting Pivot Punch and Die Corporation, Inc. The order will also, in accordance with section 106, require all persons interested in the corporation to show cause before the Referee at a time and place therein specified not less than six weeks after the granting of the order, why the corporation should not be dissolved.
Cross motion of respondent to amend the title of the proceeding is denied as the court finds that either title is acceptable and proper.
*718 The respondents’ motion to dismiss petition upon grounds that there are now pending and undetermined two actions for money damages in our court brought by the petitioner against the corporation, is denied. The court finds that the existence of other litigation is not of itself sufficient grounds for staying or delaying dissolution proceedings. (Matter of Acker & Jablow, Inc., 124 N. Y. S. 2d 298, 300, affd. 282 App. Div. 941; Matter of Fulton-Washington Corp., 3 Misc 2d 277, 287, affd. 2 A D 2d 981.)
Respondents’ motion to quash subpoenas as served upon them to produce all of the corporate books and documents that will be required at a hearing of the allegations and proofs of the parties is denied. (General Corporation Law, § 113.) A finding by the court of a prima facie showing by the petitioner of the necessity of a dissolution of the corporation mandates a hearing before a Referee at a time and place specified in the court’s order. The court finds that these subpoenas were served for use at this hearing.
Settle order.