Maeio Pittoni, J.
.Plaintiff sues defendants on three causes óf action. The first two are for specific performance and the third is for money damages.
Defendants Liebegott owned the premises at 10 Langdon Boad, Farmingdale, New York. Meanwhile, a foreclosure action was started against them which resulted in a judgment of foreclosure and sale on March 7, 1972, in an action brought by Bandall Equities Corp.
Later, in the month of March, negotiations were conducted between plaintiff and defendants for the purchase and sale of the property involved. The negotiations resulted in a contract of sale signed April 6, 1972, between plaintiff and defendants Liebegott, with defendant Farmingdale Equities Inc. as the broker. The agreed price was $31,999, of which plaintiff paid $3,200 on account by a bank check dated April 6,1972.
The closing date in the contract was July 15, 1972, at 145 Merritt Boad, Farmingdale, the office of the attorneys for defendants.
*451 The contract did not include language that ‘ ‘ time was of the essence ” or any similar language.
Moreover, the contract was not made contingent upon closing of title before plaintiff’s marriage set for July 29,1973, nor was it contingent upon plaintiff’s right to an engineering inspection of the basement. Rather, it provided that purchaser “ has inspected the premises, is familiar with it and agrees to take title ‘ As Is ’ ”. This provision is in the printed part and also the rider.
Meanwhile, on March 31, 1972, plaintiff applied for. and on April 14,1972, received a title report showing the pending foreclosure by Randall Equities Corp. against the subject property and a judgment for $1,246.14 previously procured against defendants Liebegott by Abraham & Strauss.
Thereafter, plaintiff applied for and on April 24, 1972, received a mortgage commitment for the property from the Dime Savings Bank for a prospective mortgage loan of $24,000 at 7]4% annual interest.
On May 20 or 21, 1972, defendants’ attorney told Gregory McMahon, who was conducting negotiations for plaintiff in attorney Sabatino’s name, that the liens and the foreclosure action would be cleared before closing. Incidentally, they also argued about when the premises could be inspected.
Interestingly, attorney Sabatino, in whose name negotiations had been conducted by Gregory McMahon and his secretary, stated that he was first consulted about this matter about May 16, 1972. Defendants’ attorney told him, too, that the exceptions in the title report would be cleared before the closing.
On July 12, 1972, plaintiff obtained another mortgage commitment for $24,000 at 7%% annual rate from the Dime Savings Bank for another period of 90 days.
On July 14,1972, defendants’ attorney wrote to the plaintiff’s attorney and requested an extension of time in which to close through August 15, 1972. The following day, July 15, 1972, at the time and place set by the contract for the closing, no one appeared.
However, by letter dated July 17, 1972, plaintiff’s attorney emphatically stated that no extension of time to close would be given, that according to subdivision 22 of the April 6, 1972, contract the request could not be granted, demanded a return of the $3,200 down payment and also $262 for title examination costs incurred by plaintiff. This July 17 letter ended by saying that “ upon such refund and payment this contract shall be considered cancelled; null and void ”.
*452 Meanwhile, verbally, plaintiff and his prospective wife and also their attorney had orally said they wanted title to close on July 15, 1972, because of plaintiff’s impending marriage scheduled for July 29, 1972.
An attorney title specialist associated with Title Guaranty Company, and who had prepared the title report, said that the exceptions such as for the-foreclosure action and the judgment against defendants could be cleared at the closing and that he had in his title company file a satisfaction of judgment dated June 28,1972. He also said his company could insure title anyway, subject to the judgment.
On August 3, 1972, defendants’ attorney wrote plaintiff’s attorney that defendants Liebegott were now able to close title at any time on or before August 15, 1972. The letter also asked plaintiff’s attorney to set a closing date with plaintiff’s bank and that defendants would be present to close title. The letter also continued:
“ The foreclosure proceeding will be cancelled by Sol M. Seltzer, the referee being present, who will upon receipt out of mortgage proceeds of the funds necessary to satisfy the mortgage being foreclosed, will therewith present a consent to the entry of an order cancelling the lis pendens which will be accepted by the Title Guaranty Company and permit omission of objection numbered F of your title report.
“ With respect to the judgment listed in objection numbered I of the title report, a satisfaction is now in possession of the Title Guaranty Company to be held in escrow by them until receipt of payment out of the mortgage proceeds.”
This letter of August 3, 1972, remained unanswered and defendants’ attorney followed up with a letter of August 8, 1972, stating that defendants would be ready to close title on Monday, August 14,1972, at 2:00 p.m. at the office of defendants’ attorneys. The letter also said that a deed would then be tendered and upon failure to comply with the terms of the contract, the deposit would be deemed forfeited.
On that day, August 14,1972, defendants and their attorneys waited from 2:00 p.m. until after 4:00 for plaintiffs to appear for the closing, but no one, neither plaintiffs nor anyone on their behalf, appeared to tender and demand performance.
The following day, August 15, 1972, defendants conveyed title to the premises to defendant Farmingdale Equities for $28,500 and thereafter the prior stipulation of June 21, 1972, entered between Randall Equities Corp. and defendants in their foreclosure action was the basis of an order of discontinuance *453 and cancellation of the Us pendens by order signed August 18, 1972.
Be that as it may, defendants did on that same August 15, 1972, contract for a new home and did use the $3,200 down payment received from plaintiff now in issue as a down payment for their new home.
Defendants’ letter dated July 14, 1972, requesting an extension of the closing date through August 15, 1972, was a reasonable request. There was no contract provision indicating that time was of the essence. Defendant vendors were entitled to a reasonable adjournment of the closing date.
Plaintiff’s contention that the contract of sale prohibited an extension of time was unfounded. Paragraph 23 provided that a deed was to be delivered on July 15, 1972, and contained no provision for a termination or cancellation of the contract if the closing date was delayed or extended. Plaintiff could not unilaterally make time of the essence and cancel the contract by his letter of July 17, 1972 (Taylor v. Goelet, 208 N. Y. 253).
Furthermore, neither plaintiff nor an agent appeared on the July 15 closing date to tender payment or demand performance. Although notified by letters dated August 3 and 8, 1972, and signed by Salvatore Nicosia, Esq., attorney for defendants, that the closing had been rescheduled for August 14,1972, plaintiff did not appear on the rescheduled date.
Plaintiff, having repudiated the contract by the July 17 letter and having defaulted by failing to appear at closing, is precluded from recovering his down payment and is not entitled to specific performance of the contract.
A vendee who wilfully defaults or repudiates may not in law or equity recover a down payment, even though the vendor resells for a sum equal or greater than the original contract price and it is immaterial that the vendor may be inequitably enriched by a denial of a recovery of their down payment (Silverstein v. United Cerebral Palsy Assn. of Westchester County, 17 A D 2d 160; Cohen v. Kranz, 12 N Y 2d 242).
Furthermore, a defaulting vendee cannot obtain specific performance; it is a form of equitable relief not available to a defaulting vendee.
Therefore, judgment is granted in favor of defendants dismissing all causes of action in plaintiff’s complaint, without costs. Any counterclaim is also dismissed without costs.