Sidney H. Asch, J.
Plaintiff moves to reargue the determination of this court which granted summary judgment in favor of defendants and which denied plaintiffs motion to dismiss certain counterclaims and affirmative defenses.
Plaintiff, Arthur Puro, seeks to invoke the equity powers of this court to compel Louis Puro and his codefendants to elect Arthur a director and officer of Purofied Down Products Corp. ("Purofied”) pursuant to a stockholders’ agreement dated May 1, 1951.
In 1945 Louis and Sam Puro wished to give their younger brothers an equity interest in Purofied. Joseph and Jacob were given stock unconditionally. Louis and Sam, however, did not think it advisable to give Arthur an outright interest in Purofied. Accordingly, Louis placed 125 shares of Purofied in trust for Arthur and named himself as trustee.
In 1951 the shareholders of Purofied, namely, Louis, Sam, Joseph, Jacob and Louis, as trustee, executed a stockholders’ agreement among themselves and Purofied. Paragraph Second of that agreement, which is sought to be enforced herein, provided as follows:
*858 "Second: The parties agree that so long as the individuals hereto are Stockholders of the Corporation, and there is no breach of any of the terms, covenants and conditions of this agreement, and subject to the terms, covenants and conditions of this agreement, as follows:
"(A) At all future elections to vote and cause the election and retention in office of Louis Puro, as President and Director, by the votes of Sam Puro, Jacob Puro, and Joseph Puro: Jacob Puro, as Vice President and Director, by the votes of Louis Puro, Sam Puro and Joseph Puro: Sam Puro as Secretary and Treasurer and Director, by the votes of Louis Puro, Jacob Puro and Joseph Puro: Joseph Puro, as Second Vice-President and Director, by the votes of Louis Puro, Sam Puro and Jacob Puro: Arthur Puro, as Third Vice-President and Director, by the votes of Louis Puro, Sam Puro, Jacob Puro and Joseph Puro: and that none other than they shall constitute the officers and members of the Board of Directors of said Corporation.
"(B) The Corporation agrees to and does hereby employ Louis Puro, Sam Puro, Jacob Puro, Joseph Puro, and Arthur Puro, to work in and about the affairs of the Corporation as employees, officers and members of the Board of Directors. Each of said parties shall devote so much of his time and attention to the business of the Corporation as he shall in his discretion deem necessary for the proper and orderly conduct of the business of the Corporation.
"(C) The Corporation agrees to pay a salary unto each of the individuals as the parties and the Board of Directors of the Corporation shall agree at a duly constituted meeting held for such purpose as to the salaries to be paid to each of the parties hereto, and such sum or sums may be changed, modified, increased or decreased from time to time as in the judgment of the Board of Directors it may .seem proper.”
Paragraph Twenty-first of the same agreement reads as follows: "Twenty First: This agreement or any part thereof cannot be altered, modified, changed, revised, terminated or waived except by the unanimous written consent of all the parties hereto first obtained and this provision itself cannot at any time be waived.”
On April 10, 1974, Louis, Jacob, and the estates of Sam and Joseph (who had died) amended the agreement by eliminating paragraphs Second through Thirteenth. Among the several *859 provisions of the agreement which were eliminated was the very one under which Arthur brought this action, paragraph Second, which had provided for the election of Arthur as officer and director. The agreement as amended contains no provision providing for the election of directors or officers.
A threshold issue raised is whether the law of the case doctrine bars summary judgment. In 1973, Arthur Puro moved this court for a preliminary injunction. Defendants cross-moved for summary judgment. On February 15, 1973, Mr. Justice Clifford A. Scott denied both motions.
If the "law of the case” rule is dispositive of these motions, the court has no need to consider the other aspects of the matter. However, review of the cases on that doctrine indicates that the motions should not be denied on that ground alone. Judge Learned Hand in a similar situation stated that the doctrine was not inflexible and only a "cautionary admonition to be applied when the occasion demands it” (Dictograph Prods. Co. v Sonotone Corp., 230 F2d 131, 134). He accordingly sustained the granting of summary judgment by a District Court Judge after the same application had been denied by another District Court Judge.
The doctrine has been held not to bar a second summary judgment motion where a change in facts is asserted. (Berwin & Co. v American Safety Razor Corp., 117 NYS2d 727.) The agreement herein was changed after the prior motion for summary judgment was decided. This amendatory agreement was a substantial change in the facts. And more than two years have elapsed since the prior motion was decided. The Court of Appeals affirmed plaintiffs contempt of court and his violation of Justice Dollinger’s and Justice Leff’s order, November 21, 1973, eight months after Judge Scott’s decision (Puro v Puro, 33 NY2d 805). For these reasons the prior decision does not bar consideration of these motions. (See Cohen v New York Herald Tribune, 63 Misc 2d 87, 103; Werthner v Olenin, 186 Misc 829, 831; Walker v Gerli, 257 App Div 249, 251; Messenger v Anderson, 225 US 436, 444.)
A principal argument on this motion relates to defendants’ position that if there ever was a duty on the defendants to elect Arthur, that duty ended when paragraph Second was terminated by the 1974 amendatory agreement. It is clear that if the signatories had modified their agreement before the action had been instituted by plaintiff, his interest, if any, under the Second paragraph would have been extinguished. *860 No matter what the sequence of events, however, the result must be the same.
The signatories expressly reserved their right to amend the agreement. On April 10, 1974, Louis, Jacob and the respective estates of Sam and Joseph modified the agreement by, inter alla, eliminating paragraph Second — the express provision Arthur herein relies upon.
Accordingly, plaintiff asks this court to enforce a provision to the agreement which no longer exists. If there ever was a duty on the defendants to elect Arthur, that duty ended when paragraph Second was terminated.
Because the signatories to the agreement expressly reserved their right to amend it in paragraph Twenty-first, plaintiff had no vested right to be elected an officer and director of Purofied.
In Salesky v Hat Corp. of Amer. (20 AD2d 114), a putative third-party beneficiary sought to enforce a contract which, unamended, named her as the beneficiary. The signatories duly modified it naming another party the beneficiary. The court held that the contract, by its terms, allowed the signatories to modify or terminate it. Since the signatories reserved the right to amend or modify the contract, the court held that the putative beneficiary had no rights under the contract.
Plaintiff argues that by instituting a lawsuit alleging rights under the agreement, the parties’ ability to modify it was terminated.
But the authorities cited by plaintiff to support this proposition are inapposite. Gilford v Corrigan (117 NY 257) and Stein v Severino (41 Misc 2d 209) were both suits by creditor beneficiaries, on contracts which did not contain express amendatory provisions; and both involved substantial elements of reliance not present here. Stein involved a suit by the wife’s attorney following a matrimonial action on a stipulation between the husband and wife that he pay her attorneys’ fees of $2,000. The court held that the attorney had accepted and adopted the stipulation and had acted in reliance on it by withdrawing his pending motion to fix his fee.
Gifford affords plaintiff even less support. There the owner of a mortgage sued a grantee to enforce the grantee’s assumption agreement, despite the grantee’s release by his grantor. The court held that for a creditor to recover on a third-party contract, his knowledge, assent and reliance were required. *861 (Id., at p 262.) For several years, the mortgagee had permitted the grantee to take rents and profits, thus showing reliance on the protections of the assumption agreement. (Id.) The act of bringing suit was held to establish knowledge and adoption of the assumption agreement. (Id., at p 263.)
Plaintiff ignores the two-pronged nature of Gifford’s requirements. Bringing a lawsuit demonstrates only knowledge of and assent to a third-party benefit. Even in the absence of an express term allowing modification of the contract, which is present here, plaintiff would also have to show a material change in position in reliance on the contract and a resulting injury. He has not.
Plaintiff cites Forman v Forman (17 NY2d 274) to support his argument that his rights under the 1951 agreement became irrevocable because he brought this lawsuit. But the single issue in Forman was whether the Forman children, as third-party beneficiaries of a separation agreement between their father and mother, had standing to sue on a contract which could be, but had not been, modified. The question of the children’s substantive rights if the contract had been modified was not before the court.
The contract here shows that the parties intended to give plaintiff certain benefits in Purofied Down Products Corp. subject to their reserved power to modify or terminate those benefits. His argument that, by his act of filing a lawsuit, he can transform the original contract into an unconditional agreement to benefit him is untenable.
Plaintiff argues that he is entitled to a specific performance of the 1951 stockholders’ agreement providing for his being made a director and officer of the Purofied Down Corporation. He is neither a party to the 1951 agreement nor a shareholder of Purofied.
In the cases cited by plaintiff to support his position with respect to the enforceability of such a provision, the plaintiff was suing to enforce an agreement to which he was a signatory. Moreover, in each of those cases, the plaintiff signatory was a shareholder of the corporation. Indeed, in Ohlstein v Hillcrest Paper Co. (24 Misc 2d 212, 214-215), the court specifically considered whether the plaintiff was a stockholder of the corporation so as to enable her to sue for specific performance of an agreement to elect her as a director.
In 721 Corp. v Morgan Guar. Trust Co. of N. Y. (40 Misc 2d 395), this court considered a shareholders’ agreement to elect *862 two of plaintiffs designees as directors. The plaintiff was a signatory to the agreement and a shareholder of the corporation. The court held (p 397) that an agreement to elect certain persons as directors "is enforceable as between the contracting parties”.
The reasons for allowing suit by a signatory to the agreement who is also a shareholder, and not allowing others to sue, are clear. In the former situation, there is mutuality of remedy: any signatory to the agreement may sue to enforce it. With a nonsignatory, there is no mutuality of remedy.
In short, unlike the situation where the signatory-shareholder sues, here the lack of mutuality of relief bars specific performance as to any claim plaintiff may have under the 1951 shareholders’ agreement in this action.
The remaining grounds urged by plaintiff are not persuasive. For instance, he asserts that the Court of Appeals in Puro v Puro (33 NY2d 802), determined that he was a third-party beneficiary and, in consequence, defendants are collaterally estopped from asserting the contrary.
An essential element to a collateral estoppel is a demonstration that the issues on which estoppel is claimed were actually decided in the prior action. Plaintiff does not meet this burden. He argues only that testimony and argument were adduced as to his status as a third-party beneficiary and as to the affirmative defenses of unclean hands, breach and repudiation. But he does not assert, because he cannot, that the issues were actually decided. Indeed, the prior action held only that his rights under the 1951 agreement flowed from his status as a trust beneficiary; and the buy-out provisions of the trust were enforceable as between the contracting parties. His alleged status as a third-party beneficiary and his right to enforcement of the contract in view of his acts of bad faith and repudiation may have been argued but were not reached by the court.
There is another compelling reason for this court’s decision. It is settled law that a signatory to the agreement would be denied specific performance in circumstances here presented. See Poggioli v Liebegott (77 Misc 2d 449, 453) where the court held, "Plaintiff, having repudiated the contract by the July 17 letter and [thereafter] having defaulted * * * is not entitled to specific performance of the contract.” (Cf. Raygo, Inc. v Credle Equip., 40 AD2d 207 [a party cannot seek the benefit of a provision it breached].)
*863 To reach such result, it is not necessary for this court to accept the charges that plaintiff embezzled corporate funds, committed perjury concerning the same, and violated court orders made to prevent the misuse of corporate funds, as has been asserted by defendants. It is enough, as in the situation here, that the conduct of the plaintiff has been such that his employment by the corporation may be disruptive or otherwise against the best interests of the corporation.
A leading case enunciated the applicable policy in an analogous situation.
Fells v Katz (256 NY 67), following Manson v Curtis (223 NY 313), lays down the rule consistently followed. At pages 72, 73, Judge Pound writing for the unanimous court, said: “An agreement among stockholders whereby the directors are bereft of their power to discharge an unfaithful employee of the corporation is illegal as against public policy. (Manson v. Curtis, supra.) The agreement of the stockholders to continue a man in the directorate must be construed as an obligation to retain him only so long as he keeps the agreement on his part faithfully to act as a trustee for the stockholders. An agreement to continue a man as president is dependent upon his continued loyalty to the interests of the corporation.”
Recently, the Appellate Division, First Department, in Redmond v Redmond (42 AD2d 542) followed the rule. (See Matter of Burkin [Katz], 1 NY2d 570, 572; Matter of Hirshon, 221 NYS2d 583, 587; Lubliner v SYLU Knitting Mills, 213 NYS2d 726; Tremsky v Green, 106 NYS2d 572, 575; McQuade v Stoneham, 263 NY 323, 327.)
These cases are convincing that the board of directors and shareholders of Purofied have the exclusive right to determine that Arthur Puro should not be an officer, director or employee of Purofied notwithstanding the 1951 agreement and are justified because of his conduct in neither hiring him nor electing him as a director or officer of Purofied.
Upon the foregoing grounds, the original determination is adhered to. Accordingly, plaintiff’s motion to dismiss the affirmative defenses is denied and defendants’ motion for summary judgment dismissing the complaint is granted.