OPINION OF THE COURT
Richard S. Lane, J.
At the core of this close corporation family feud lie requirements for a supra-majority vote (80%) for the transaction of any business by the stockholders or the directors. These requirements are contained in a written stockholders’ agreement but are not reflected in either the certificate of incorporation or the by-laws.
In the happier days of corporate birth in 1973, plaintiff and one Lester Pape each held 40% and defendant Joseph Caspi held the remaining 20%. Plaintiff was president and he together with Mr. Pape and all three defendants constituted the board of directors. When Mr. Pape withdrew in *1043 1978, the stock was redistributed with defendants Nathan Muchnick and Sheldon Schwartz becoming stockholders and signatories to an amended stockholders’ agreement which referred to the change in ownership and otherwise ratified the original agreement.
On or about February 19, 1981, plaintiff received a notice of a special meeting by directors to be held in the afternoon of February 25 with an agenda including among other matters the election of a new director to fill Mr. Pape’s vacancy and the removal of plaintiff as president. With his corporate position threatened and what he deemed his rightful veto power about to be flouted, plaintiff commenced this action seeking a permanent injunction against violation of the stockholders’ agreement together with reformation of the certificate of incorporation and bylaws on the grounds of inadvertent mistake, and at the same time brought on this motion for a preliminary injunction returnable on one day’s notice on February 25.
On the call of the calendar on February 25, the court granted defendants’ request for an adjournment for the purpose of putting in answering papers, but also orally issued a temporary restraining order pending hearing of the motion. Defendants have now cross-moved for multiple relief including dismissal of the complaint as barred by the Statute of Limitations and a temporary injunction against various alleged activities of plaintiff. These activities may all be subsumed under the heading of conduct favoring plaintiff’s solely owned enterprise engaged in the same business and sharing the same premises as the corporation, and these activities form the basis of defendants’ charge that plaintiff has breached his fiduciary obligations to the corporation. Plaintiff of course has denied these activities.
The meeting of the directors was held in the afternoon of February 25 as called. Despite the court’s temporary restraining order, defendants over plaintiff’s objection proceeded to elect a new director by a 3 to 1 vote. They next by a 4 to 1 vote directed the removal of corporate production to separate facilities under their exclusive control. They also ratified by a 4 to 1 vote the opening of a new corporate bank account with checks drawn thereon to be signed by *1044 the president or vice-president and the secretary or treasurer. Actually this resolution conformed to a provision in the stockholders’ agreement whereas the previously existing account did not. In deference to the court’s restraining order, consideration of plaintiff’s removal as president was adjourned.
Plaintiff’s retort to the conduct of the meeting was the companion motion now also pending to punish defendants for contempt. In opposition thereto defendants argue that election of a director is not encompassed in the words “the transaction of any items of business” for which the stockholders’ agreement requires an 80% vote of all of the directors, and that the other actions taken received an 80% affirmative vote. Nevertheless defendants have advised the court that the newly elected director has resigned and that they have revoked that part of the resolution which excluded plaintiff from participation in control of the corporate business at the new separate facilities.
Patently the first issue to be considered is defendants’ cross motion to dismiss plaintiff’s complaint. Defendants’ argument is two-tiered. First, defendants assert that reformation premised on mistake as opposed to fraud is governed by the six-year Statute of Limitations set forth in CPLR 213 which begins to run when the mistake is committed, here sometime in 1973 after the execution of the original stockholders’ agreement. Second, defendants assert that without reformation the supra-majority provisions are unenforceable because they have not been incorporated in the charter as required by sections 616 and 709 of the Business Corporation Law.
With respect to the first tier argument defendants clearly are correct (Nichols v Regent Props., 49 AD2d 847). Plaintiff only disputes the date on which the statute commences to run relying on Kronenberg v Sullivan County Steam Laundry Co. (91 NYS2d 144, affd without opn 277 App Div 916). The procedural pattern in Kronenberg is indeed strikingly similar — a notice that defendants intended to vote their majority stock in violation of a stockholders’ agreement assuring plaintiffs equal participation in control, an action commenced by plaintiffs to declare their rights under the agreement and to reform the certifi *1045 cate of incorporation to embody it, a motion for a preliminary injunction against defendants’ threatened action, a cross motion to dismiss the complaint as barred by the Statute of Limitations. The court in Kronenberg granted the preliminary injunction and denied the motion to dismiss holding that the statute began to run from the date of defendants’ threat. In support the court struggled to find constructive fraud (as opposed to mistake) in defendants’ unabashed power grab after over 20 years of adherence to the agreement. No such perfidious conduct can be brought home to defendants here (see Green v Karlson Assoc., 159 NYS2d 245, 247).
With respect to the second tier argument, defendants again appear to be stating hornbook law (Model, Roland & Co. v Industrial Acoustics Co., 16 NY2d 703; Mook v Berger, 6 NY2d 833; Matter of Faehndrich, 2 NY2d 468; Long Park v Trenton-New Brunswick Theatres Co., 297 NY 174; Benintendi v Kenton Hotel, 294 NY 112; 11 NY Jur, Corporations, § 417). Some of the earlier authorities antedate sections 616 and 709 of the Business Corporation Law and their predecessor, section 9 of the Stock Corporation Law which for the first time permitted variation from normal corporate procedure. The spirit of the earlier authorities apparently carried over into an initial strict construction of the new liberalizing statutes. As the so-called “incorporated partnership” became an increasingly common participant on the commercial scene, however, Shubin v Surchin (27 AD2d 452, 455) and Beresovski v Warszawski (28 NY2d 419,425) pointed the way to a less rigid approach (see, also, Hornstein, Judicial Tolerance of the Incorporated Partnership, 18 Law & Contemporary Problems 435). And now, although it was interpreting Delaware rather than New York law, the Court of Appeals in Zion v Kurtz (50 NY2d 92, 102) has apparently swept all of the earlier authorities into the realm of legal history stating as follows: “Since there are no intervening rights of third persons, the agreement requires nothing that is not permitted by statute, and all of the stockholders of the corporation assented to it, the certificate of incorporation may be ordered reformed, by requiring Kurtz to file the appropriate amendments, or more directly he may be held estopped *1046 to rely upon the absence of those amendments from the corporate charter”. Otherwise as was observed in the footnote on page 102 of the decision, the requirement of incorporation in the charter intended as a shield for outsiders could be converted into a sword by one who has expressly consented to the limitations in the agreement.
In other words, the issue of reformation may have become only a red herring in this case.
The next issue to be considered is defendants’ charge that plaintiff has breached his fiduciary obligations. Although the charge raises issues of fact which may not be resolved on papers, it is in substance a defense of lack of clean hands which must be faced before equity may intervene on behalf of plaintiff.
The law is clear the provisions of an agreement guaranteeing a minority stockholder’s continued participation in control as an officer and director will not protect against a discharge for cause. The seminal case is Fells v Katz (256 NY 67, 72) wherein Judge Pound speaking for a unanimous Court of Appeals held that: “An agreement among stockholders whereby the directors are bereft of their power to discharge an unfaithful employee of the corporation is illegal as against public policy. * * * The agreement of the stockholders to continue a man in the directorate must be construed as an obligation to retain him only so long as he keeps the agreement on his part faithfully to act as a trustee for the stockholders.” That statement still governs (Redmond v Redmond, 42 AD2d 542; Tremsky v Green, 106 NYS2d 572; see Puro v Puro, 89 Misc 2d 856, 863).
As a monument to the ingenuity of the Bar, however, a way around the rule of Fells v Katz (supra) has been found — the supra-majority voting provision. The power to remove for cause despite the provisions of a stockholders’ agreement may only be exercised by a majority or such greater vote as may be required for the transaction of business (Matter of Burkin [Katz], 1 NY2d 570; Springut v Don & Bob Rests. of Amer., 57 AD2d 302; see Crandall v Master-Eagle Photoengraving Corp., 27 Misc 2d 475). It is true that these cases refer to a supra-majority voting *1047 provision incorporated in the charter, but they antedate the new wisdom found in Zion v Kurtz (50 NY2d 92, supra).
Thus defendants may never be able to test plaintiff’s alleged faithlessness by ordinary corporate removal procedures. And they may never be able to evade the veto power he has acquired over the transaction of any business by the stockholders or the directors pursuant to their perhaps inadvertent but nevertheless voluntary agreement. It is too disingenuous to argue as they do that the election of a director is not the transaction of business. This does not mean that defendants are left without remedy against the current corporate impasse or against plaintiff’s alleged faithlessness. They may petition for dissolution pursuant to section 1104 and subdivision (a) of section 1104 of the Business Corporation Law. They may seek the assistance of the Attorney-General pursuant to sections 706 and 109 (subd [a], par [4]) of the Business Corporation Law. And, as they have already done herein, they may institute derivative action to restrain and to recover damages for plaintiff’s alleged misfeasance.
Accordingly, the court finds that plaintiff has made a sufficient showing of irreparable injury and likelihood of success, and his motion for a temporary injunction is granted to the extent of enjoining pending trial violation of the supra-majority voting provisions contained in paragraphs Second and Eleventh of the stockholders’ agreement. Defendants’, actions at the February 25, 1981 director’s meeting establishing an additional corporate bank account and physically removing the corporate business or part thereof from premises shared with Popi II Fashions, Inc., when it was allegedly effectively under plaintiff’s sole control are, however, specifically not deemed in violation of this injunction although such actions were taken contrary to the stockholders’ agreement and perhaps even contrary to the court’s temporary restraining order. It is the court’s objective to maintain pending trial not the status quo ante these motions but the status quo presently existing.
Plaintiff’s motion to punish defendants for contempt is denied, the court finding that they promptly and adequately purged themselves.
*1048 Defendants’ motion for multiple relief is granted to the extent of enjoining pending trial interference with the bank account opened pursuant to resolution adopted at the directors’ meeting on February 25, 1981, and it is otherwise denied.
A prompt trial is directed.